# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
# PEORIA DIVISION

| | | |
|---|---|---|
| ILLINOIS MARINE TOWING, INC., | ) | |
| | ) | |
| Plaintiff/Creditor, | ) | |
| | ) | |
| v. | ) | Case No. 06-cv-1279 |
| | ) | |
| CASEY A. BARNICK | ) | |
| | ) | |
| Defendant/Debtor. | ) | |

## O P I N I O N and O R D E R

Before the Court is the Bankruptcy Appeal filed by Plaintiff, Illinois Marine Towing, Inc., on November 2, 2006, appealing Bankruptcy Judge Thomas L. Perkin's October 12, 2006 decision granting Defendant's Motion to Dismiss Plaintiff's Complaint. For the reasons that follow, the Bankruptcy Court's decision is AFFIRMED

## BACKGROUND

The facts of this case are not in dispute and are taken directly from Judge Perkin's Order. On May 21, 2004, Defendant, Casey A. Barnick, operated a 17-foot pleasure boat while intoxicated. The boat struck the Motor Vessel Herman Crown, a ship owned and operated by Plaintiff, Illinois Marine Towing, Inc., ("IMT"). As a result of the collision, three passengers on Barnick's boat were injured and a fourth passenger was killed. Barnick subsequently pled guilty to Aggravated Operation of a Watercraft Under the Influence of Alcohol and was sentenced to a suspended 180 day term of imprisonment and 36 months probation.

A civil lawsuit ensued in which the victims of the accident filed suit against Barnick, IMT, and the operator of the M/V Herman Crown. IMT in turn sought indemnification from Barnick for any damages the victims may recover. Barnick subsequently filed for bankruptcy pursuant to Chapter 7 of the Bankruptcy Code on October 14, 2005. IMT filed adversary proceedings on November 15, 2005 seeking a declaration that their claims against Barnick are not dischargeable pursuant to 11 U.S.C. § 523(a)(9). Barnick filed a Motion to Dismiss IMT's claim and Judge Perkins issued an Order granting the Motion and dismissing IMT's Complaint on October 12, 2006. IMT filed this appeal on November 2, 2006 [Doc. 1] and a brief in support on November 15, 2006 [Doc. 2]. A response was filed on December 4, 2006 [Doc. 3] and a reply was filed on December 12, 2006 [Doc. 4].

Title 11 U.S.C. § 523, as explained in more detail below, outlines various debts that are non-dischargeable. The type of non-dischargeable debt relevant here is debt arising from the drunken operation of a motor vehicle. While it is unnecessary to go through the entire legal posture of the parties in this case and in their other lawsuits, it is sufficient to note that IMT seeks to hold Barnick responsible for any damages it must pay to the injured parties as a result of Barnick's drunken operation of his motorboat. In Judge Perkins' thorough and considered opinion, he found that claims against Barnick would be dischargeable in bankruptcy. Judge Perkins determined that the statute was ambiguous with respect to the term "motor vehicle." After reviewing the statutory context, dictionary definitions, legislative history, and case authority, Judge Perkins

determined that Congress did not intend for the term "motor vehicle" to include a motorboat. Thus, Judge Perkins concluded that IMT's Complaint seeking the opposite declaration must be dismissed as a matter of law.

## STANDARD OF REVIEW

This Court has jurisdiction to review the decision of the Bankruptcy Judge pursuant to 28 U.S.C. § 158(a). District courts are to apply a dual standard of review when considering a bankruptcy appeal. The findings of fact of the Bankruptcy Judge are reviewed for clear error, while the conclusions of law are reviewed de novo. In re Yonikus, 996 F.2d 866, 868 (7th Cir. 1993); In re Ebbler Furniture and Appliances, Inc., 804 F.2d 87, 89 (7th Cir. 1986); see also, Bankruptcy Rule 8013 (West 1995). The legal issue before the Court is narrow: whether a debt that arises from a drunken motorboat accident is the type of debt that is not dischargeable pursuant to bankruptcy law.

## DISCUSSION

In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must view a complaint in a light most favorable to the plaintiff. Williams v. Ramos, 71 F.3d 1246, 1250 (7th Cir. 1995). The Court must accept all well-pleaded factual allegations and draw all reasonable inferences from those facts in favor of the plaintiff. Richards v. Kiernan, 461 F.3d 880, 882 (7th Cir. 2006). A plaintiff is not required to plead extensive facts, legal theories, or to anticipate defenses. Massey v. Merrill Lynch and Co., Inc., 464 F.3d 642, 650 (7th Cir. 2006). However, a plaintiff must "provide the grounds of his entitlement to

3

relief" that are "more than labels and conclusion [] [or] a formulaic recitation of the elements of a cause of action." <u>Bell Atlantic Corp. v. Twombly</u>, 127 S.Ct. 1955, 1964-1965 (2007) (citations and editing marks omitted). In particular, "[f]actual allegations must be enough to raise a right to relief above the speculative level." <u>Id.</u> at 1965. As noted above, IMT seeks a declaration that Barnick's debts are non-dischargeable and encourages this Court to find that the term "motor vehicle" as used in title 11 U.S.C. § 523 includes within its definition a motorboat.

At the time that Barnick filed for bankruptcy,[1] Title 11 U.S.C § 523 provided:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt –
>
> ***
>
> (9) for death or personal injury caused by the debtor's operation of a motor vehicle if such operation was unlawful because the debtor was intoxicated from using alcohol, a drug, or other substance . . . .

Barnick argues that this code section does not apply to his drunken operation of a motorboat and that, therefore, any such debts are dischargeable. IMT, however, contends that the term "motor vehicle" includes within its meaning a motorboat and that the relevant claims are therefore not dischargeable. There is no dispute that Barnick is a debtor covered by this code section and that the debt that is in question is for death or personal injuries. Thus, the only question is whether the term "motor vehicle" includes within its definition the term motorboat.

---

[1] This code section was amended on October 17, 2005, two days after Barnick filed for bankruptcy. The language of the amended section will be addressed *infra*.

4

In construing a statute, the Court first must look to the language of the statute. Estate of Cowart v. Nicklos Drilling Co., 505 U.S. 469, 475 (1992) ("In a statutory construction case, the beginning point must be the language of the statute, and when a statute speaks with clarity to an issue judicial inquiry into the statute's meaning, in all but the most extraordinary circumstance, is finished."); McMillan v. Collection Professionals, Inc., 455 F.3d 754, 762 (7th Cir. 2006) (noting that the text of the statute is the most reliable source of congressional intent). Words are given "their plain meaning unless doing so would frustrate the overall purpose of the statutory scheme, lead to absurd results, or contravene clearly expressed legislative intent." United States v. Vallery, 437 F.3d 626, 630 (7th Cir. 2006); see also In re Baker, 430 F.3d 858, 860 ("Canons of statutory construction discourage an interpretation that would render a statute meaningless . . . ."); United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 242-243 (1989) ("The plain meaning of legislation should be conclusive except in the rare case in which the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." (internal quotation and editing marks and citation omitted)). When the words of a statute are unambiguous, the court's inquiry ends. Desert Palace, Inc. v. Costa, 539 U.S. 90, 99 (2003).

This Court finds that the term motor vehicle is not ambiguous and that its meaning includes a conveyance on land, and not a motorboat. "In determining whether the meaning of statutory language is plain or ambiguous, we look to the specific language at issue, the context within which the language is used, and the

5

broader context of the statute as a whole." <u>United States v. Miscellaneous Firearms, Explosives, Destructive Devices and Ammunition</u>, 376 F.3d 709, 712 (7th Cir. 2004). As noted above, the term "motor vehicle" is not defined in the statute or the bankruptcy code. As such, this Court begins with the assumption that Congress intended the words to have a plain and ordinary meaning. <u>Federal Deposit Insurance Corporation</u>, 510 U.S. 471, 476 (1994). In order to determine the plain and ordinary meaning, the Court's may employ dictionaries. <u>See</u> <u>Cler v. Illinois Educ. Ass'n</u>, 423 F.3d 726, 731 (7th Cir. 2005). A dictionary definition of "motor vehicle" includes "an automotive vehicle not operated on rails; esp: one with rubber tires for use on highways." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, p. 1476. This accords with the Court's understanding of what a motor vehicle is: a car or truck or van being driven on the road.[2] The term "motorboat" is separately

---

[2] Various on-line dictionaries provide a similar definition:

> Motor vehicle: an automotive vehicle not operated on rails; especially : one with rubber tires for use on highways. Merriam-Webster Online, http://www.merriam-webster.com/dictionary/motor%20vehicle (last visited Mar. 16, 2008);

> Motor vehicle: an automobile, truck, bus, or similar motor-driven conveyance. Dictionary.com, http://dictionary.reference.com/browse/motor%20vehicle (last visited Mar. 16, 2008);

> Motor vehicle: road vehicle powered by engine: a car, truck, or other road vehicle powered by an engine. MSN Encarta, http://encarta.msn.com/dictionary_/motor%2520vehicle.html (last visited Mar. 16, 2008);

> Motor vehicle: A self-propelled wheeled conveyance, such as a car or truck, that does not run on rails. The American Heritage Dictionary

defined, its primary definition being: "a boat or small ship propelled by an internal-combustion engine or an electric motor." Id. at 1475.  When defined separately, the term motor is relevantly described as "one that imparts motion: a source of mechanical power." Id. at 1475.  And the term vehicle is relevantly described as "a means of carrying or transporting something." Id. at 2538.  Dictionary definitions, then, offer the guidance that the terms "motor vehicle" and "motorboat" are specifically defined separately and differently with both their meanings being incorporated into the more general and separate terms "motor" and "vehicle."

These dictionary definitions, while not employed to give a final meaning of the term, do accord with this Court's understanding that motor vehicle includes cars, trucks, and the like.  There is no specific indication that Congress intended the terms "motor" and "vehicle" to be used separately such that they include any type of conveyance, whether on land, water, or in the air.  Neither the context of the term nor the greater context of the statute provides further guidance.  This particular statute does not define the term "motor vehicle." Stenberg v. Carhart, 530 U.S. 914, 942 (2000) ("When a statute includes an explicit definition, we must follow that definition, even if it varies from that term's ordinary meaning.").  The term itself is used hundreds of times in the United State Code – in most instances, it appears that the term is used to describe a passenger vehicle, i.e. a car.  See e.g. 5 U.S.C. § 7905(b)(1); See also Matter of Greenway, 71 F.3d 1177, 1180 (5th Cir. 1996).  Thus,

---

Online, http://www.bartleby.com/61/44/M0444400.html (last visited Mar. 16, 2008).

looking to the statute itself or the greater context of the statute does not provide guidance as to the meaning to the term motor vehicle and whether it was the intent of Congress to include within its meaning motorboat. However, in light of the dictionary definition, this Court's understanding of the term motor vehicle, and the use of motor vehicle throughout the United States Code, it would appear that the term would not include "motorboat" within its meaning. This Court's conclusion, that the term is unambiguous and does not include "motor boat" within its definition, does not render the statue absurd, contravene clearly established Congressional intent (as shall be seen below), or frustrate the objective of the bankruptcy statute.

Even if the term was ambiguous, this Court nonetheless would agree with Judge Perkins' thorough analysis. As noted, if the terms of a statute are ambiguous, this Court must give effect to the intent of Congress in enacting the statute. Ron Pair, 489 U.S. at 242-243. In doing so, the Court may look to many guides including legislative history. Burlington Northern Railroad Company v. Oklahoma Tax Commission, 481 U.S. 454, 461 (1987). In addition,

> The definition of words in isolation [] is not necessarily controlling in statutory construction. A word in a statute may or may not extend to the outer limits of it definitional possibilities. Interpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis.

Dolan v. United States Postal Service, 546 U.S. 481, 486 (2006); see also United States v. Universal C.I.T. Credit Corp., 344 U.S. 218, 221 (1952) (stating that "in construing a statute not unambiguous, [the court looks to] all the

8

light relevantly shed upon the words and the clause and the statute that express the purpose of Congress"). Moreover, statutes are construed "by the courts with reference to the circumstances existing at the time of the passage." United States v. Wise, 370 U.S. 405, 411 (1962). However, the rules of construction do not "license courts to improve statutes (or rules) substantively, so that their outcomes accord more closely with judicial beliefs about how matters ought to be resolved." Jakolski v. Daniels, 427 F.3d 456, 461 (7th Cir. 2005).

As Judge Perkins noted, there is a split in persuasive authority regarding the meaning of "motor vehicle" and whether it includes within its definition vehicles such as motorboats. See Matter of Greenway, 71 F.3d at 1180 (does not include), cert. denied, 517 U.S. 1244 (1996); In re Dilk, 311 B.R. 758, 760 (Bankr. S.D. Ind. 2004) (includes) rev'd, 2004 WL 3130617 (S.D. Ind. 2004) (does not include); In re Soda, 261 B.R. 342 (Bankr. D. Conn. 2001) (includes); In re Fall, 192 B.R. 16 (Bankr. D.N.H. 1995) (does not include); In re Race, 159 B.R. 857 (Bankr. W.D. Mo. 1993) (does not include) rev'd, 192 B.R. 949 (W.D. Mo. 1995) (includes); In re Williams, 101 B.R. 356 (Bankr. S.D. Fla. 1989) (includes) aff'd, Williams v. Radivoj, 111 B.R. 361 (S.D. Fla. 1989); see also In re Dunn, 203 B.R. 414, 415-417 (E.D. Mich. 1996) (finding that a snowmobile was a "motor vehicle"). A number of these cases explored in detail, as did Judge Perkins, the legislative history of this statute. This Court finds more persuasive that case authority that finds that motor vehicle does not include within its definition motorboat.

As pointed out in previous cases, this law was enacted on November 6, 1978 by the 95th Congress.  Pub. L. 95-598, 92 Stat. 2590.  This particular section was added by an amendment on July 10, 1984 by the Bankruptcy Amendments and Federal Judgeship Act of 1984. Pub. L. 98-353, 98 Stat. 333.[3]  It was subsequently amended on November 29, 1990 by the Crime Protection Act of 1990 to read:

> for death or personal injury caused by the debtor's operation of a motor vehicle if such operation was unlawful because the debtor was intoxicated from using alcohol, a drug, or another substance.

> Pub. L. 101-647, 104 Stat. 4789.

This version, which governs this litigation, eliminated the necessity of a judgment or order finding liability due to intoxication.  The section was amended again by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23, to its current incarnation which substitutes the more inclusive phrase "motor vehicle, vessel, or aircraft" for the term "motor vehicle":

> For death or personal injury caused by the debtor's operation of a motor vehicle, vessel, or aircraft if such operation was unlawful

---

[3]  At that time, the text of section 523(a)(9) read:

> to any entity, to the extent that such debt arises from a judgment or consent decree entered in a court of record against the debtor wherein liability was incurred by such debtor as a result of the debtor's operation of a motor vehicle while legally intoxicated under the laws or regulations of any jurisdiction within the United States or its territories wherein such motor vehicle was operated and within which such liability was incurred[.]

> Id.

because the debtor was intoxicated from using alcohol, a drug, or another substance.

Id.

This latest amendment indicates Congress' recognition that the previous incarnation of the statute (the one that governs this case) did not cover the drunken operation of a motorboat or aircraft. As such, this Court's conclusion that motorboat is not included in the term motor vehicle does not contravene legislative intent.

In any event, additional legislative history concerning this subsection, and in particular the 1984 amendment, is scant. See Greenway, 71 F.3d at 1150 n.5. The Ninth Circuit, in In re Hudson, 859 F.2d 1418 (1988), explored this history, albeit in a separate context.[4] Id. at 1421-1424. The Ninth Circuit explained that this law was introduced as a bill by Senator John Danforth in the hopes that it would "clear up the conflict in the courts over the dischargeability of DWI judgments." Id. at 1421. Of particular interest is the motivation that Senator Danforth used as explanation for the bill – his statements during debates indicated a desire to prevent drunken drivers, and he specifically mentioned car drivers, from escaping liability through filing bankruptcy.[5] It appears, then, that Congress was concerned

---

[4] The Ninth Circuit was faced with the questions concerning § 523(a)(9)'s requirement of a judgment or consent decree (in the 1984 version).

[5] Senator Danforth stated, in part:

> Today there exists an unconscionable loophole in the bankruptcy statue which makes it possible for drunk drivers who have injured, killed, or caused property damage to others to escape civil liability for

11

with the effects of drunk driving, and not necessarily the drunken operation of a motorboat.  This Court can only conclude, as did Judge Perkins, that even if the statute was ambiguous, Congress intended to only include vehicles driven on a road.

## CONCLUSION

With this history in mind, and this Court's understanding of the term motor vehicle, it is clear that the statute did not encompass debt that arises from the drunken operation of a motorboat.  For this reason, the Bankruptcy Court's opinion is AFFIRMED.

Entered this <u>29th</u> day of July, 2008

s/ Joe B. McDade
JOE BILLY McDADE
United States District Judge

---

their actions by having their judgment debt discharged in Federal bankruptcy court.  This loophole affords opportunities for scandalous abuse of judicial processes.

Imagine the heartbreak of a parent who had been notified that his or her child has been killed or permanently disabled by some fellow weaving down the road, intoxicated and totally oblivious to the danger he poses to others.

<u>Bankruptcy Amend. & Fed. Act Legis. History</u> 148, February 24, 1983, P.L. 98-353 (Arnold & Porter).